UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADAM TALLEY, ET AL.,<br>　　Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 21-1509 |
| UNITED STATES OF AMERICA, ET AL.,<br>　　Defendants | SECTION: "E" (5) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Adam Talley and Floyd Talley brought personal injury claims against the United States of America.[1] Plaintiffs allege that on December 4, 2019, while installing a metal patio cover at the West Jefferson Medical Center ("West Jeff"), a United States military helicopter flew low flights over their jobsite resulting in three long steel roofing panels being blown onto them causing their injuries.[2]

The matter before the Court is whether the United States, or its employees, the Marine Corps helicopter pilots acting within the scope of their employment during the training flights over West Jeff on December 4, 2019, were negligent. Plaintiffs' negligence claims are brought pursuant to the Federal Tort Claims Act.[3] Plaintiffs seek damages for past, present, and future medical costs, personal injuries, pain and suffering, loss of enjoyment of life, and travel expenses associated with medical treatment.[4]

The matter was tried before the Court with jurisdiction conferred by the Federal Tort Claims Act,[5] without a jury, over four days.[6] The Court heard testimony from Adam Talley, Floyd Talley, Dr. Cuong Bui, Dr. Donald Dietze, Jr., Lieutenant Colonel Sean P.

---

[1] The United States Department of the Navy and the United States Coast Guard were dismissed, without prejudice. R. Doc. 7.
[2] R. Doc. 1 at 2-3.
[3] 28 U.S.C. § 2671-80.
[4] R. Doc. 1 at 4.
[5] 28 U.S.C. §§ 1346(b), 2671-80.
[6] R. Docs. 99, 101, 102, and 108 (minute entries for proceedings on October 2, 3, 4, and 5, respectively).

1

Dillon, Carl John ("C.J.") Delery, Major Jacob Allen Ashbolt, Dr. Kevin Darr, Dr. Kenneth Lee Orloff, Scott Anthony Rexwinkle, Gunnery Sergeant Andrew Weanie, and Dr. Najeeb M. Thomas by video deposition. The Court admitted into evidence Exhibits 1, 4-12, 15-27, 29-33, 35, 38-40, 46, 49-51, 53, 55, 58, 62, and 70-81.[7]

Having considered the testimony and other evidence at trial, the arguments of counsel, and the applicable law, the Court now issues the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. To the extent any findings of fact may be construed as conclusions of law, the Court adopts them as such. To the extent any conclusions of law may be construed as findings of fact, the Court adopts them as such.

## FINDINGS OF FACT

I. **Plaintiffs were employed by C.J. Delery Enterprises, Inc. on December 4, 2019, and were installing metal roofing panels at West Jeff on that day.**

1. Adam Talley and Floyd Talley were employed by C.J. Delery Enterprises on December 4, 2019.[8] C. J. Delery Enterprises was a subcontractor for Lemoine Construction.

2. The Talleys were installing metal roofing panels on an awning at the West Jeff Emergency Department entrance ("Talley jobsite") as their job assignment from C.J. Delery Enterprises on that date.[9]

3. The Talley jobsite was located in the West Jeff parking lot, just southwest of the main entrance to the emergency room.[10]

---

[7] R. Docs. 99, 101, 102, and 108.
[8] Ex. 74. Excerpt of Proposed Pre-Trial Order, Uncontested Material Facts. R. Doc. 56.
[9] *Id.*
[10] Testimony of Adam Talley; Exhibits 15 and 16. Ex. 17, fig. 7, also shows the location of the jobsite.

2

4. The small yellow circle within the patio cover outlined in Exhibit 17, figure 7, shows the location where the Talleys were working on December 4, 2019.[11]

5. The awning was sixteen feet above the ground and the Talleys were installing the panels from manlifts, also called bucket lifts, at that height.[12]

6. The roofing panels each measured thirty-eight feet by one foot and each weighed thirty-eight pounds.[13]

II. **A Marine Corps helicopter was flying training exercises at West Jeff on December 4, 2019.**

7. The United States Marine Corps ("Marine Corps") was flying training exercises in a UH-1 Y Huey helicopter to practice landing and taking off at the West Jeff Emergency Department helipad on December 4, 2019.[14]

8. Lt. Col. Dillon, Maj. Ashbolt, and Gy. Sgt. Weanie had no recollection of the exact flight paths of the helicopter as it approached the West Jeff helipad during the Marine Corp training exercises on December 4, 2019 and they had no memory or record of anything unusual happening during their training that day.[15]

9. The Marine Corps helicopter made four to six landings at the West Jeff helipad on the afternoon of December 4, 2019.[16]

10. Lt. Col. Sean Dillon was the Aircraft Commander and Pilot-in-Charge of the Marine Corps helicopter flying the exercises on December 4, 2019.[17]

---

[11] This location was identified based on Google Earth images of the area showing the patio cover installed by the Talleys and the position of the sun and other landmarks in the photographs of the jobsite taken by Adam Talley. The precise location identified by a small yellow circle in Ex. 17, fig. 7 is near the location identified by Adam Talley in Ex. 15 with a blue circle.
[12] Testimony of Plaintiffs; Ex. 4, BATES No. Talley-002207 shows the jobsite.
[13] Ex. 74.
[14] Ex. 74; testimony of Lt. Col. Dillon, Maj. Ashbolt, and Gy. Sgt. Weanie.
[15] Testimony of Lt. Col. Dillon, Maj. Ashbolt, and Gy. Sgt. Weanie.
[16] Testimony of Lt. Col. Dillon; Ex. 17 at 9.
[17] *Id.*

3

11. Maj. Jacob Ashbolt was the co-pilot of the helicopter on December 4, 2019.[18]

12. Gy. Sgt. Andrew Weanie and Sgt. Zachary Koeter were crew members on board the helicopter on December 4, 2019.[19]

### III. Typically, when winds are from the south, Marine Corps helicopters approach the West Jeff helipad from the north or northwest; and when winds are from the north, helicopters generally approach the West Jeff helipad from the southwest.

13. When winds are from the south, Marine Corps helicopters flying training exercises at West Jeff generally approach the hospital's helipad from the north or northwest and then take off towards the south.[20]

14. Winds in the area are typically from the south, so ingress from the north is usually the safest, standard path.[21]

15. In the uncommon event of winds from the north, Marine Corps helicopters generally approach West Jeff from the southwest.[22]

### IV. On December 4, 2019, winds in the area around West Jeff were from the north.

16. Dr. Kenneth L. Orloff, who has a Ph.D. in mechanical engineering, was qualified to testify as an expert in aviation accident reconstruction.

17. Dr. Orloff researched the atmospheric conditions at West Jeff on December 4, 2019.[23]

18. Adam Talley's photograph of the Talley jobsite taken on December 4, 2019 shows a flag being blown by north winds.[24]

---

[18] *Id.*
[19] *Id.*
[20] Testimony of Lt. Col. Dillon and Maj. Ashbolt; Ex. 78 (Maj. Ashbolt's drawing of typical flight path where winds are from the south, approaching helipad from the north).
[21] *Id.*
[22] Testimony of Maj. Ashbolt; Ex. 79 (Maj. Ashbolt's drawing of flight path where winds from the north, approaching helipad from the southwest).
[23] Ex. 17. at 11-12.
[24] Id. at 10.

19. Based on Dr. Orloff's testimony and the Adam Talley photograph of the Talley jobsite, the winds at West Jeff were coming from the north between 7 and 14 miles per hour on the afternoon of December 4, 2019.[25]

V. **The Marine Corps helicopter approached the West Jeff helipad from the southwest on December 4, 2019.**

20. A photograph of Floyd Talley on a manlift at the Talley jobsite on December 4, 2019, shows a helicopter appearing in the sky behind him.[26]

21. The photograph shows the helicopter was roughly west of the jobsite at the time the photograph was taken.[27]

22. Major Ashbolt testified that during the training flights the helicopter approached the helipad at West Jeff from the southwest.[28]

23. Based on the Floyd Talley photograph and the testimony of Major Ashbolt, the Marine Corps helicopter approached the West Jeff helipad from the southwest in its four to six landings on the afternoon of December 4, 2019.[29]

VI. **The Marine Corps helicopter did not fly low and close over the Talley jobsite on December 4, 2019.**

24. Because the winds were out of the north on December 4, 2019, Dr. Orloff directed a Marine Corps crew to conduct a simulation training flight approaching the West Jeff helipad from the south/southwest on June 7, 2022 ("the 2022 simulation flight"), for the purposes of his analysis.[30]

---

[25] Testimony of Dr. Orloff.
[26] Ex. 4, BATES No. Talley-002207; *see also*, Ex. 17, fig. 3 for enhanced version.
[27] Ex. 17 at 10. **No conclusive evidence was provided regarding the direction of the depicted helicopter's travel.**
[28] *Compare* Ex. 17, fig. 10 with Ex. 79.
[29] Testimony of Adam Talley, Dr. Orlofff, and Maj. Ashbolt; Ex. 17.
[30] Testimony of Dr. Orloff.

5

25. The Marine Corps training flight on December 4, 2019 did not fly low and close to the Talley jobsite because the jobsite was too close to the hospital buildings for that to have occurred.[31]

26. If the flight on December 4, 2019 had flown low and close to the Talley jobsite, the helicopters crew members would have seen the construction workers, recognized the safety risk, and called for the helicopter to "wave off."[32]

27. There would have been no tactical gain to the Marine Corps, and only increased risk, for the helicopter to fly low and close over the Talley jobsite during the training flights on December 4, 2019.[33]

28. Other employees of Lemoine Construction, the primary contractor for the West Jeff construction job, were near the Talley jobsite on December 4, 2019.[34]

29. No employees of Lemoine Construction were called to testify at the trial.

30. No witnesses other than the Plaintiffs testified to having seen a helicopter near the jobsite on December 4, 2019.

31. The uniforms worn by the pilots and crew of the Marine Corps helicopter on December 4, 2019 were green.[35]

32. In the 2022 simulation flight, Dr. Orloff directed the crew to fly as close as safely possible to the location of the Talley jobsite during the helicopter's approach from the southwest.[36]

---

[31] *Id.*
[32] Testimony of Lt. Col. Dillon.
[33] Testimony of Maj. Ashbolt.
[34] Testimony of Floyd Talley.
[35] Testimony of Lt. Col. Dillon, Maj. Ashbolt, and Gy. Sgt. Weanie; *see also* Ex. 73. Adam Talley testified he could see a man in a blue uniform hanging out the side of the helicopter when it passed low over the Talley jobsite. However, this testimony was rebutted by the testimony of the Marine Corps helicopter crew members and the photograph of the green uniform they were wearing. Thus, Adam Talley's description of the military uniform he testified he saw does not corroborate his allegations about the helicopter's flight path over the Talley jobsite.
[36] *Id.*

33. The flight path of the 2022 simulation flight did not fly over the parking lot or the location of the Talley job site in its approach from the southwest.[37]

34. The 2022 simulation flight path approaching from the southwest was the closest a Marine Corp helicopter could fly to the Talley jobsite.[38]

35. The 2022 simulation flight path from the southwest corresponds to the typical Marine Corps helicopter approach to West Jeff from the southwest, as diagrammed by Maj. Ashbolt.[39]

36. The Marine Corps helicopter did not fly low and close over the West Jeff parking lot directly adjacent to the Talley jobsite on December 4, 2019.

VII. **Wind turbulence from the Marine Corps helicopter training flights on December 4, 2019 did not cause the steel panels to lift or be tossed about and hit the Plaintiffs from behind.**

37. During the 2022 simulation flight, Dr. Orloff's colleague, Scott Rexwinkle monitored the wind speed near the Talley jobsite at an elevation of sixteen feet above the ground, which is consistent with the height of the Talleys' manlifts.[40]

38. Due to construction at the hospital, the wind speed recordings during the 2022 simulation flight were taken about 30 feet away from the exact location of the Talley jobsite.[41]

39. The recorded wind speed at sixteen feet above the ground during the 2022 simulation flight, when the helicopter approached from the southwest and flew as close as it safely could to the Talley jobsite, was 2.97 mph.[42]

---

[37] Ex. 17, fig. 12; Testimony of Dr. Orloff, Lt. Col. Dillon, and Major Ashbolt.
[38] Ex. 17 at 12-13.
[39] Ex. 17, fig. 12; Ex. 79.
[40] Testimony of Scott Rexwinkle and Dr. Orloff; Ex. 17 at 15.
[41] Testimony of Scott Rexwinkle and Dr. Orloff; Ex. 17 at 15.
[42] Ex. 17 at 15.

40. Rexwinkle felt no change in wind when the helicopter flew as close as it safely could to the jobsite during the 2022 simulation flight.[43]

41. Dr. Orloff analyzed the vortex wake created by the Marine Corps helicopter and its potential effect on the Talley jobsite on December 4, 2019.[44]

42. Vortex wake is the wind turbulence shed by a helicopter traveling above approximately 20 mph.[45]

43. Vortex wake is an organized flow of wind turbulence which travels in two rotating cylindrical shapes from either side of a helicopter's rotor.[46]

44. The strength of the vortex wake is at its maximum when it is first shed from the helicopter, and the speed of the wind flow decreases over time.[47]

45. The cylinder of vortex wake turbulence never travels lower than a height equal to one half the diameter of the helicopter's rotor.[48]

46. In the case of the Huey helicopter used by the Marine Corps on December 4, 2019, the rotor was 48 feet long. Thus, the center of the vortex wake cylinder shed by the helicopter traveled parallel to the ground at a height of 24 feet.[49]

47. While some amount of wind may have been felt below 24 feet as the Marine Corps helicopter approached the West Jeff helipad on December 4, 2019, it would have been minimal, as the vortex wake of the helicopter decayed rapidly as it traveled downward.[50]

---

[43] Testimony of Scott Rexwinkle.
[44] Ex. 17.
[45] Testimony of Dr. Orloff, Ex. 17 at 7-9.
[46] *Id.*
[47] Ex. 17 at 8.
[48] Testimony of Dr. Orloff; Ex. 17 at 7-9.
[49] Testimony of Dr. Orloff; Ex. 17 at 7-9.
[50] Testimony of Dr. Orloff.

8

48. The position of the West Jeff buildings would have interrupted the path of the helicopter's vortex wake such that no perceptible wind turbulence would have reached the Talley jobsite on December 4, 2019.[51]

49. Because the Marine Corps helicopter was not hovering above the Talley jobsite, or traveling below 20 mph over the jobsite, no down wash was created by the Marine Corps helicopter over the Talley jobsite on December 4, 2019.[52]

50. The Plaintiffs would not have experienced significant wind turbulence at the Talley jobsite caused by the passing of the helicopter.

51. Even if the vortex wake reached the Talley jobsite intact, the wake was not strong enough to lift a thirty-eight-pound metal roofing panel in the manner described by Adam Talley.[53]

VIII. **Plaintiffs' alleged injuries were not caused by the Marine Corps helicopter training flights at West Jeff on December 4, 2019.**

52. Neither Adam Talley nor Floyd Talley sought medical treatment at West Jeff or from any other healthcare provider on December 4, 2019, despite working onsite at the hospital on that date.[54]

53. Plaintiffs called their employer, C.J. Delery, on December 4, 2019 to report the incident and went home from work early that day.[55]

54. Plaintiffs returned to work for C.J. Delery at West Jeff the following day.[56]

---

[51] Testimony of Dr. Orloff; Ex. 17 at 17-19.
[52] Testimony of Dr. Orloff; Ex. 17 at 7-9.
[53] Testimony of Dr. Orloff; Ex. 17 at 20-21.
[54] Ex. 74
[55] Testimony of Adam Talley; Testimony of Floyd Talley; Ex. 74.
[56] Testimony of Adam Talley; Testimony of Floyd Talley.

55. Plaintiffs finished the project on which they were working on December 4, 2019, and continued to work on a number of other projects for C.J. Delery until January 2020.[57]

56. Adam Talley has worked five days and forty hours per week at Jim Jr.'s Auto Repair as a mechanic since March 7, 2020.[58]

57. Adam Talley first sought medical treatment on January 9, 2020 at Ochsner Urgent Care.[59]

58. Dr. Dietz and Dr. Darr, the doctors who treated Adam Talley and were called as witnesses in this trial, did not begin treatment of Adam Talley until 2022.[60]

59. Neither Dr. Dietz nor Dr. Darr reviewed or relied on any of Adam Talley's medical records from the period immediately following December 4, 2019.[61]

60. Both Dr. Dietz and Dr. Darr diagnosed Adam Talley with injuries to the back, shoulder, wrist, and ankle based on imaging and examinations performed in 2022.[62]

61. Floyd Talley saw his primary care doctor following the incident on December 4, 2019 but did not see the specialist she recommended.[63]

62. Floyd Talley did not seek medical treatment again for the alleged injuries until he saw Dr. Dietz and Dr. Darr in the spring of 2022.[64]

63. Dr. Darr diagnosed Floyd Talley with injuries to his right shoulder based on imaging and examinations performed in 2022.[65]

---

[57] Testimony of Floyd Talley; Testimony of C.J. Delery.
[58] Ex. 74.
[59] Testimony of Adam Talley; Ex. 30, BATES No. Talley-000555.
[60] Testimony of Dr. Dietz; Testimony of Dr. Darr; Ex. 33.
[61] Testimony of Dr. Dietz; Testimony of Dr. Darr; Ex. 5; Ex. 6.
[62] Testimony of Dr. Dietz; Testimony of Dr. Darr; Ex. 5; Ex. 6.
[63] Testimony of Floyd Talley.
[64] Testimony of Dr. Dietz; Testimony of Dr. Darr; Ex. 35.
[65] Testimony of Dr. Dietz; Testimony of Dr. Darr; Ex. 7; Ex. 8.

64. Dr. Dietz additionally identified injuries to Floyd Talley's lumbar spine, hip, and knee.[66]

65. Floyd Talley had an accident in September 2019 which fractured his vertebra and required surgery, which continued to cause him pain on December 4, 2019.[67]

66. No medical records from the period immediately following the alleged incident were introduced at trial or relied upon by the testifying medical providers, and no medical providers who treated Adam or Floyd Talley around December 4, 2019 were called as witnesses.

67. Adam Talley was examined by Dr. Najeeb Thomas, neurosurgeon, in connection with a workers' compensation claim. Dr. Thomas found multiple inconsistencies in Mr. Talley's physical examination and was concerned that Mr. Talley was experiencing symptom magnification and symptom overlay. Dr. Cuong Bui, neurosurgeon, examined Adam Talley and concluded that most of his symptoms were consistent with longstanding degenerative changes of both the cervical and lumbar spine rather than trauma.[68]

## **CONCLUSIONS OF LAW**

The Federal Torts Claim Act provides a limited waiver of sovereign immunity for certain claims against the United States sounding in tort. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346, which provides district courts with jurisdiction over claims against the United States sounding in tort.[69]

---

[66] Testimony of Dr. Dietz; Ex. 7.
[67] Ex. 7.
[68] Testimony of Dr. Thomas and Dr. Bui.
[69] 28 U.S.C. § 1346(b)(1), 2671-80.

11

The United States is liable in the same manner as a private person under like circumstances, in accordance with the law of the place where the alleged act or omission occurred.[70] Louisiana Civil Code art. 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Louisiana's negligence law is applicable in this action. To succeed on a claim for negligence under Louisiana law, a plaintiff must prove by a preponderance of the evidence: (1) the duty of care owed by the Defendant to the Plaintiff; (2) that the Defendant breached the duty owed to the Plaintiff; (3) the Defendant's breach of the duty was a cause-in-fact of the Plaintiff's injuries; (4) legal causation; and (5) damages caused by the breach.[71]

Plaintiffs have the burden of proving their claims by a preponderance of the evidence. "Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proven is more probable than not."[72] If the evidence is in equipoise, there is no preponderance.[73]

Plaintiffs did not carry their burden of proving by a preponderance of the evidence that Defendants breached a duty of care to them, since Plaintiffs did not establish it was more likely than not the Marine Corps helicopter flew low and close over the Talley jobsite on December 4, 2019 or that the wake from the helicopter lilfted a thirty-eight-pound metal roofing panel in the manner described by Adam Talley. Plaintiffs did not carry their burden of establishing by a preponderance of the evidence that the Marine Corps helicopter flying training missions at West Jeff on December 4, 2019 was the cause-in-fact of their alleged injuries.

---

[70] 28 U.S.C. § 1346(b)(1), 2674.
[71] Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 633
[72] Crowell v. City of Alexandria Through Snyder, 558 So. 2d 216, 218 (La. 1990) (citing Marcotte v. Travelers Ins. Co., 258 La. 989, 249 So.2d 105 (1971)).
[73] Miller v. Leonard, 588 So. 2d 79, 84 (La. 1991)

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered in favor of the Defendants and against the Plaintiffs on Plaintiffs' claims.

**New Orleans, Louisiana, this 17th day of September, 2024.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**